UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN GONZALEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>YOLO COUNTY, et al.,<br><br>Defendants. | No. 2:24-cv-01683-TLN-AC<br><br><br><br>**ORDER** |

This matter is before the Court on Defendants Yolo County ("County") and City of Woodland's ("City") (collectively, "Government Defendants") Motion to Dismiss (ECF No. 9), Defendants Pablo Gonzales and Sergio Pimentel's (collectively, "Investigator Defendants") Motion to Dismiss (ECF No. 15), and Defendant Michael Vroman's ("Vroman") Motion to Dismiss (ECF No. 20). All motions are fully briefed. (ECF Nos. 10, 12, 16, 18, 21, 23.) For the reasons set forth below, the Court GRANTS Government Defendants' motion, GRANTS in part and DENIES in part Investigator Defendants' motion, and GRANTS Vroman's motion.

///
///
///
///
///

1

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On August 30, 2016, Ronald Antonio ("Antonio") was stabbed to death. (ECF No. 1 at 2, 6.) Plaintiff Justin Gonzalez ("Gonzalez") was convicted for the crime and was incarcerated for seven years before he was acquitted. (*Id.*) Gonzalez, along with his wife, Morgan Gonzalez, and his parents, Linda Gonzalez and Charles Gonzalez, (collectively, "Plaintiffs") then filed suit. (ECF No. 1.) Plaintiffs allege Gonzalez was wrongfully convicted due to investigative misconduct. (*Id.* at 10–19.) Specifically, Plaintiffs allege Defendant Sergio Pimentel, the lead investigator of Antonio's murder, and Defendant Pablo Gonzales, another investigator, suppressed DNA and other exculpatory evidence and fabricated witness testimony. (*Id.* at 10–11.) Additionally, Plaintiffs allege Vroman, a district attorney, continued to prosecute Gonzalez despite knowing he was innocent. (*Id.* at 19.) Plaintiffs further allege the County and City engaged in a series of unconstitutional policies, practices, and training failures that led to Gonzalez's wrongful conviction. (*Id.* at 40–45.)

Plaintiffs' Complaint was filed on June 12, 2024, against Government Defendants, Investigator Defendants, Vroman, and DOES 1 through 10 (collectively, "Defendants"). (*See generally id.*) Plaintiffs Morgan Gonzalez, Linda Gonzalez and Charles Gonzalez allege interference with familial relationship under 42 U.S.C. § 1983 against Investigator Defendants, Vroman, and DOES 1 through 10 (Claim Six). (*Id.* at 36.) Plaintiff Justin Gonzalez alleges the following twelve additional state and federal law claims:

- Malicious prosecution under the Fourth Amendment and 42 U.S.C. § 1983 against Investigator Defendants, Vroman, and DOES 1 through 10 (Claim One);
- Fabrication of evidence under the Fourteenth Amendment and 42 U.S.C. § 1983 against Investigator Defendants, Vroman, and DOES 1 through 10 (Claim Two);
- Suppression of exculpatory evidence under the Fourteenth Amendment and 42 U.S.C. § 1983 against Investigator Defendants, Vroman, and DOES 1 through 10 (Claim Three);
- Unlawful continued detention under the Fourteenth Amendment and 42 U.S.C. § 1983 against Investigator Defendants, Vroman, and DOES 1 through 10 (Claim

2

Four);
- False identification under the Fourteenth Amendment and 42 U.S.C. § 1983 against Investigator Defendants, Vroman, and DOES 1 through 10 (Claim Five);
- Supervisory liability under 42 U.S.C. § 1983 against DOES 1 through 10 (Claim Seven);
- *Monell* liability for unconstitutional policies, customs, and practices under 42 U.S.C. § 1983 against Government Defendants (Claim Eight);
- *Monell* liability for failure to train under 42 U.S.C. § 1983 against Government Defendants (Claim Nine);
- Negligence against all Defendants (Claim Ten);
- Malicious prosecution against all Defendants (Claim Eleven);
- False arrest/false imprisonment against all Defendants (Claim Twelve); and
- Tom Bane Act violation under California Civil Code § 52.1 against all Defendants (Claim Thirteen).

(*Id.* at 19–51.)

On August 15, 2024, Government Defendants filed a motion to dismiss the following claims against them: (1) the *Monell* claims (Claims Eight and Nine); (2) the malicious prosecution claim (Claim Eleven); and (3) the false arrest/false imprisonment claim (Claim Twelve). (ECF No. 9.) Plaintiffs filed an opposition. (ECF No. 10.) Government Defendants filed a reply. (ECF No. 12.)

Investigator Defendants also filed a motion to dismiss on September 23, 2024. (ECF No. 15.) Investigator Defendants argue the following claims should be dismissed against them: (1) the false identification claim (Claim Five); (2) the malicious prosecution claim (Claim Eleven); and (3) the false arrest/false imprisonment (Claim Twelve). (*Id.*) This motion is also fully briefed. (ECF Nos. 16, 18.)

Finally, Vroman filed a motion to dismiss on December 20, 2024, seeking to dismiss all claims against him. (ECF No. 20.) The motion is fully briefed. (ECF Nos. 21, 23.)

//

3

**II.    STANDARD OF LAW**

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

1  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*
2  *Council of Carpenters*, 459 U.S. 519, 526 (1983).
3        Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough
4  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim
5  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
6  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at
7  680. While the plausibility requirement is not akin to a probability requirement, it demands more
8  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility
9  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial
10 experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or
11 her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly
12 dismissed. *Id.* at 680 (internal quotations omitted).
13       If a complaint fails to state a plausible claim, "'[a] district court should grant leave to
14 amend even if no request to amend the pleading was made, unless it determines that the pleading
15 could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,
16 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).
17     **III.**    **ANALYSIS**
18         A.    <u>Government Defendants' Motion to Dismiss</u>
19       Government Defendants argue Gonzalez's *Monell* claims (Claims Eight and Nine) and
20 claim for false arrest/false imprisonment (Claim Twelve) should be dismissed for lack of
21 sufficient factual support. (ECF No. 9 at 1–2.) Additionally, Government Defendants contend
22 Gonzalez's common law malicious prosecution claim (Claim Eleven) is barred by California
23 Government Code §§ 821.6 and 815.2(b). (*Id.* at 2.) The Court addresses these arguments in
24 turn.
25           *i.*    *Monell Claims (Claims Eight and Nine)*
26       Municipalities cannot be held liable under § 1983 for unconstitutional torts of their
27 employees based solely on respondeat superior. *Monell v. Dep't of Soc. Servs. of City of N.Y.*,
28 436 U.S. 658, 693–94 (1978). Pursuant to *Monell*, a municipality is only liable under § 1983

when its own illegal acts are a "moving force" in the constitutional violation. *Id.* The Ninth Circuit recognizes four theories for establishing municipal liability under *Monell*: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Gonzalez alleges two different *Monell* claims against Government Defendants. (ECF No. 1 at 40–45.) In Claim Eight, Gonzalez alleges Government Defendants had unconstitutional customs, policies, and/or practices of focusing investigations on innocent persons, fabricating witness testimony, suppressing exculpatory evidence, and promising favorable benefits to witnesses. (*Id.* at 40–43.) In Claim Nine, Gonzalez alleges Government Defendants failed to train their employees. (*Id.* at 43–45.) Government Defendants move to dismiss each of these *Monell* claims, arguing they are insufficiently pleaded. (ECF No. 9-1 at 3–4.) As discussed below, the Court agrees.

          *a)*      *Unconstitutional Custom/Policy/Practice*

Gonzalez alleges Government Defendants had nine policies, customs, and practices which caused his constitutional violations. (ECF No. 1 at 40–41; ECF No. 10 at 5.) Government Defendants argue these allegations are conclusory and do not provide any specific reference to any prior similar incidents. (ECF No. 9-1 at 3–4; ECF No. 12 at 1–2.) In opposition, Plaintiffs argue the nine customs, practices and policies outlined in paragraphs 120–129 in the Complaint contain sufficient allegations to support this *Monell* claim. (ECF No. 10 at 5–6.) Additionally, Plaintiffs argue that because the constitutional violations against Gonzalez spanned several years, this demonstrates a policy, custom, or practice existed. (*Id.* at 6.)

Where a plaintiff seeks to establish a *Monell* claim based on a longstanding custom, he must sufficiently allege: (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a longstanding custom which amounted to a policy; (3) the custom amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the custom is the moving force behind the constitutional violation. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal citation omitted). "The custom must be so 'persistent and widespread'

1   that it constitutes a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918
2   (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be
3   predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient
4   duration, frequency and consistency that the conduct has become a traditional method of carrying
5   out policy." *Id.*

6   Here, assuming without deciding that Gonzalez has sufficiently alleged a constitutional
7   violation, the Complaint only contains allegations about general policies. It is devoid of any
8   specific factual allegations regarding sufficiently similar incidents to demonstrate a longstanding
9   custom or policy. (*See generally* ECF No. 1.) Without more, the duration of Gonzalez's alleged
10  constitutional violation does not cure this deficiency as Plaintiffs seem to suggest. Accordingly,
11  the Court finds Gonzalez fails to allege *Monell* liability based on an unconstitutional custom,
12  policy, or practice. Because the Court cannot conclude "the pleading could not possibly be cured
13  by the allegation of other facts," the Court GRANTS Government Defendants' motion to dismiss
14  Claim Eight with leave to amend. *Lopez*, 203 F.3d at 1130.

15                               *b)   Failure to Train*

16  Gonzalez also alleges Government Defendants failed to adequately train Investigator
17  Defendants. (ECF No. 1 at 43–45.) Government Defendants argue the allegations are conclusory
18  and therefore insufficient. (ECF No. 9-1 at 3–4; ECF No. 12 at 1–2.) In opposition, Plaintiffs
19  argue Government Defendants' failure to train their employees is "clear[]" and "obvious." (ECF
20  No. 10 at 7, 8.)

21  A local government's failure to train employees may rise to the level of an official policy
22  under *Monell*, but the omission must amount to "deliberate indifference to the rights of persons
23  with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61
24  (2011) (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "The issue is whether the training
25  program is adequate and, if it is not, whether such inadequate training can justifiably be said to
26  represent municipal policy." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006)
27  (citation omitted). "A pattern of similar constitutional violations by untrained employees is
28  'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."

1  *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).
2  However, a plaintiff can "prov[e] a failure-to-train claim without showing a pattern of
3  constitutional violations where 'a violation of federal rights may be a highly predictable
4  consequence of a failure to equip law enforcement officers with specific tools to handle recurring
5  situations.'" *Long*, 442 F.3d at 1186 (quoting *Brown*, 520 U.S. at 409).

6  Here, as previously discussed, the Complaint does not provide any other allegations
7  regarding sufficiently similar incidents to establish a pattern of constitutional violations.
8  Accordingly, to survive at this stage, Gonzalez must allege his wrongful incarceration was the
9  highly predictable consequence of Government Defendants' failure to appropriately train its
10 employees. *See id.*

11 Gonzalez alleges Government Defendants acted with deliberate indifference in failing to
12 train their employees regarding: (1) unconstitutionally initiating, focusing, and continuing an
13 investigation on an innocent person; (2) fabricating witness testimony through suggestiveness or
14 coercion; (3) concealing and/or suppressing exculpatory forensic and other evidence; (4) delaying
15 the analysis or testing of forensic evidence; (5) promising witnesses favorable benefits; (6)
16 permitting witnesses to testify despite knowing they are providing fabricated testimony. (ECF
17 No. 1 at 44.) According to Gonzalez, this failure caused his wrongful incarceration. (*Id.* at 44–
18 45; ECF No. 10 at 7.) However, the Complaint does not specify how the training failures were
19 deficient nor how the deficiencies were obvious. For example, the allegations do not establish
20 how Gonzalez's constitutional injuries were a highly predictable consequence of Government
21 Defendants' training failures. *See, e.g.*, *Knighten v. City of Anderson*, No. 2:15-CV-01751-TLN-
22 CMK, 2016 WL 1268114, at *4, 7 (E.D. Cal. Mar. 31, 2016) (finding similarly). Without more,
23 Plaintiffs fail to allege *Monell* liability based on failure to train. Because the Court cannot
24 conclude "the pleading could not possibly be cured by the allegation of other facts," the Court
25 GRANTS Government Defendants' motion to dismiss Claim Nine with leave to amend. *Lopez*,
26 203 F.3d at 1130.

27                 *ii.*    *Malicious Prosecution Claim (Claim Eleven)*
28 Next, Government Defendants argue Gonzalez's eleventh claim for malicious prosecution

is barred by California Government Code § 821.6 and § 815.2(b).  (ECF No. 9-1 at 4.)  In response, Plaintiffs concede these arguments.  (ECF No. 10 at 8.)  As such, the Court GRANTS Government Defendants' motion to dismiss Claim Eleven without leave to amend.  *See also Willis v. City of Bakersfield*, No. 1:21-CV-1077-AWI-JLT, 2021 WL 5054437, at *11 (E.D. Cal. Nov. 1, 2021) (finding public entities immune from liability for malicious prosecution due to the application of California Government Code § 815.2(b) and § 821.6).

         iii.   *False Arrest/False Imprisonment Claim (Claim Twelve)*

    Gonzalez's twelfth claim is for false arrest/false imprisonment under California Government Code §§ 815.2 and 820.  (ECF No. 1 at 48–49.)  "False arrest is but one way of committing a false imprisonment[.]"  *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 752 n.3 (1997) (citation omitted), *as modified on denial of reh'g* (Mar. 17, 1997).  A false imprisonment claim arises upon "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief."  *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000) (citation omitted).

    California law allows for "false imprisonment claims for arrests by law officers in two situations: (1) when an arrest is made without a warrant, and (2) when an officer maliciously arrests and imprisons another by personally serving an arrest issued solely on information deliberately falsified by the arresting officer himself."  *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1205 n.4 (9th Cir. 2003) (internal citations and quotations omitted).  "False arrest or imprisonment and malicious prosecution are mutually inconsistent concepts, the former relating to conduct that is without valid legal authority and the latter to conduct where there is valid process or due authority."  *Randle v. City & Cnty. of San Francisco*, 186 Cal. App. 3d 449, 456 (1986) (citation omitted).  A claim for false arrest or false imprisonment ends when a plaintiff's confinement is pursuant to a lawful process.  *Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("[A] false imprisonment ends once the victim becomes held *pursuant to such [a legal] process* — when, for example, he is bound over by a magistrate or arraigned on charges." (emphasis in original) (citation omitted)).  Once a plaintiff is confined pursuant to such a lawful process, "unlawful detention forms part of the damages for . . . malicious prosecution, which

1  remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of
2  legal process." *Id.* at 390 (emphasis in original) (citation omitted).
3         As the basis for this claim, Gonzalez alleges Investigator Defendants, Michael Vroman
4  and DOES 1-10 caused Gonzalez to be wrongfully arrested, imprisoned, and detained based on
5  their acts or omissions in fabricating evidence, providing false testimony, and suppressing DNA
6  and other exculpatory evidence. (ECF No. 1 at 48–49.) Gonzalez alleges Government
7  Defendants are vicariously liable for its employees, agents and/or detectives' acts or omissions.
8  (*Id.*)
9         Government Defendants argue these allegations are insufficient. (ECF No. 9-1 at 5.) At
10 the outset, Government Defendants note the Complaint does not clarify the timing or
11 circumstances of Gonzalez's arrest, which they argue is determinative as to whether Gonzalez can
12 assert a false arrest/false imprisonment claim. (*Id.*) According to Government Defendants, if the
13 arrest was made after legal proceedings were initiated, the claim would be displaced by a claim
14 for malicious prosecution. (*Id.*) In the alternative, if the arrest was made prior to the initiation of
15 legal proceedings, Government Defendants argue Gonzalez must allege and prove there was no
16 probable cause or no warrant. (*Id.*) However, regardless of the timing, Government Defendants
17 argue Gonzalez fails to allege facts to support a claim for false arrest/false imprisonment. (*Id.*)
18        In opposition, Plaintiffs do not directly respond to Government Defendants' arguments
19 about timing. Instead, Plaintiffs merely argue the Complaint sufficiently alleges facts to state a
20 claim for false arrest/false imprisonment because it alleges Gonzalez was acquitted of criminal
21 charges. (ECF No. 10 at 8–9.) According to Plaintiffs, this demonstrates his arrest and
22 imprisonment were unlawful. (*Id.* at 9.)
23        However, without any factual allegations about the circumstances of Gonzalez's arrest,
24 such as whether an arrest warrant was lawfully obtained or whether there was probable cause,
25 Gonzalez fails to sufficiently allege a false arrest or false imprisonment claim separate and apart
26 from a malicious prosecution claim. *See Randle*, 186 Cal. App. 3d at 456; *Jones v. Keitz*, No. 16-
27 CV-01725-LJO-EPG, 2017 WL 1375230, at *8 (E.D. Cal. Apr. 17, 2017). Further, as
28 Government Defendants note in reply, it appears from Plaintiffs' opposition that Gonzalez's

claim does in fact stem from his conviction and sentence. (ECF No. 10 at 8–9; ECF No. 12 at 2.) But as established above, malicious prosecution — not false arrest/false imprisonment — is the tort which remedies the wrongful institution of legal process. *Wallace*, 549 U.S. at 390.

However, because the Court cannot say with certainty that Gonzalez would not be able to amend the Complaint to allege a standalone false arrest or false imprisonment claim, the Court GRANTS Government Defendants' motion to dismiss Claim Twelve with leave to amend. *Lopez*, 203 F.3d at 1130.

B.  <u>Investigator Defendants' Motion to Dismiss</u>

Investigator Defendants move to dismiss Gonzalez's claim for false identification (Claim Five), his claim for malicious prosecution (Claim Eleven), and his claim for false arrest/false imprisonment (Claim Twelve). (ECF No. 15.) The Court addresses these claims in turn.

i.  *False Identification Claim (Claim Five)*

Gonzalez's fifth claim alleges Investigator Defendants directed two witnesses to fabricate their testimony and falsely identify Justin Gonzalez in violation of his Fourteenth Amendment rights. (ECF No. 1 at 34–36.) Gonzalez titles this a "*Manson/Biggers* Claim." (*Id.* at 34.)

In *Neil v. Biggers*, the Supreme Court stated the factors to consider when determining the likelihood of misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. 409 U.S. 188, 199–200 (1972). In *Manson v. Brathwaite*, the Supreme Court added that "reliability is the linchpin in determining the admissibility of identification testimony[.]" 432 U.S. 98, 114 (1977).

Here, Investigator Defendants move to dismiss the claim arguing the Complaint fails to allege facts necessary to establish a *Manson/Biggers* claim. (ECF No. 15-1 at 3.) Specifically, Investigator Defendants argue there are no factual allegations establishing Investigator Defendants were involved in performing photo lineups, photo arrays, or other identification processes that violated Gonzalez's due process rights. (*Id.*) In opposition, Plaintiffs argue a *Manson/Biggers* claim does not require a photo lineup to have occurred. (ECF No. 16 at 5.)

11

According to Plaintiffs, all that is required is "some sort of unconstitutional misidentification." (*Id.*)

The Court finds Investigator Defendants' argument unpersuasive. First, Investigator Defendants provide no citations to authority in support of their argument that *Manson/Biggers* claims do not extend to the situation here — where Defendants are alleged to have met and coerced witnesses to make a false identification. Second, neither *Biggers* nor *Manson* explicitly narrowed Fourteenth Amendment false identification claims to instances involving photo lineups or photo arrays as Investigator Defendants appear to suggest.

Investigator Defendants also argue that focusing on the alleged coercive interrogations makes this claim indistinguishable from the malicious prosecution claim and therefore legally redundant. (ECF No. 15-1 at 3; ECF No. 18 at 1–2.) However, again, Investigator Defendants do not cite any legal authority in support of this argument. Without more, Investigator Defendants' grounds for dismissal are unpersuasive. Accordingly, the Court DENIES Investigator Defendants' motion to dismiss Gonzalez's fifth claim.

### ii. *Malicious Prosecution Claim (Claim Eleven)*

Investigator Defendants argue Gonzalez's eleventh claim for malicious prosecution is also barred against them by California Government Code § 821.6. (ECF No. 15-1 at 3.) Plaintiffs concede here as well that they are barred in this case from bringing a malicious prosecution claim against Investigator Defendants. (ECF No. 16 at 6.) Accordingly, as set forth above, the Court GRANTS Investigator Defendants' motion to dismiss Claim Eleven without leave to amend.

### iii. *False Arrest/False Imprisonment Claim (Claim Twelve)*

Investigator Defendants also seek to dismiss Gonzalez's twelfth claim for false arrest/false imprisonment on two separate grounds. (ECF No. 1 at 48; ECF No. 15-1 at 4.) First, Investigator Defendants argue no factual allegations demonstrate they "personally participated in the alleged arrest," which they contend is required under California law.[2] (*Id.*) Plaintiffs do not address this

---

[2] Investigator Defendants also argue this requirement exists under Federal law. (ECF No. 15-1 at 4.) Because Plaintiffs claim is brought under California Governance Code §§ 815.2 and 820, the Court only addresses the state law requirement. (ECF No. 1 at 48–49.)

argument in their opposition. (ECF No. 16.) In *Du Lac v. Perma Trans Prod., Inc.*, which Investigator Defendants cite, California's Second District Court of Appeal noted a defendant "cannot be liable for false imprisonment unless they take an *active role* in bringing about the unlawful arrest." 103 Cal. App. 3d 937, 943 (1980) (emphasis in original). While having an "active role" does not require Investigator Defendants to have directly participated in the actionable conduct, *see Black v. City of Blythe*, 562 F. Supp. 3d 820, 830 (C.D. Cal. 2022) (citation omitted), Investigator Defendants are correct that Gonzalez does not proffer any factual allegations specific to Investigator Defendants regarding their involvement with his arrest. (ECF No. 15-1 at 4.)

Second, similar to Government Defendants, Investigator Defendants argue Gonzalez's false arrest/false imprisonment claim is "encompassed within" a malicious prosecution claim. (*Id.*) In opposition, Plaintiffs argue Investigator Defendants were "instrumental" in Gonzalez's detention. (ECF No. 16 at 6.) Such an argument is insufficient to correct the factual deficiencies in the Complaint. As discussed above, without any factual allegations about Gonzalez's arrest, the Complaint fails to state a false arrest/false imprisonment claim against the Investigator Defendants separate and apart from a malicious prosecution claim. Accordingly, as above, the Court GRANTS Investigator Defendants' motion to dismiss Claim Twelve with leave to amend.

### C.   Vroman's Motion to Dismiss

Vroman moves to dismiss all ten of the claims asserted against him. (ECF No. 20-1 at 4.) According to Vroman, the Complaint fails to meet federal pleading requirements because it rests solely on conclusory statements. (*Id.* at 2.) Without any factual allegations about his alleged conduct, Vroman argues the claims against him should be dismissed. (*Id.* at 3–4.) Additionally, Vroman argues, as Plaintiff has already conceded, Vroman is immune from liability for common law malicious prosecution under California Government Code § 821.6.[3] (*Id.* at 4 n.1.)

Plaintiffs oppose, arguing they have in fact pleaded sufficient factual allegations. (ECF No. 21 at 3.) Specifically, Plaintiffs cite paragraphs sixty, sixty-nine and seventy as examples of

---

[3]   Vroman misstates the malicious prosecution claim as Claim Six. (ECF No. 20-1 at 4 n.1.) The malicious prosecution claim is listed in the Complaint as Claim Eleven. (ECF No. 1 at 46.)

1 sufficient allegations.  (*Id.* at 5.)  However, none of these paragraphs contain factual allegations
2 describing Vroman's involvement in the alleged unconstitutional conduct.  For example, in
3 paragraph sixty-nine, the Complaint states "at all relevant times," Vroman, along with
4 Investigator Defendants and DOES 1-10 "fabricated evidence against Justin Gonzalez."  (*Id.*)
5 These allegations are insufficient.  Simply concluding Vroman participated in the alleged
6 unconstitutional conduct is not enough at this stage.

       In the alternative, Plaintiffs request leave to amend.  (ECF No. 21 at 6.)  Because the Court cannot conclude leave to amend would be futile for claims one through six, ten, twelve and thirteen, the Court GRANTS the motion to dismiss these claims against Vroman with leave to amend.  However, because Plaintiffs fail to address Vroman's argument that he is immune from a malicious prosecution claim and for the reasons addressed above, the Court GRANTS the motion to dismiss Claim Eleven against Vroman without leave to amend.

### IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Government Defendants' motion to dismiss (ECF No. 9), GRANTS in part and DENIES in part Investigator Defendants' motion to dismiss (ECF No. 15), and GRANTS Vroman's motion to dismiss (ECF No. 20) as follows:

1. Government Defendants' motion to dismiss Claims Eight, Nine, and Twelve is GRANTED with leave to amend;
2. Government Defendants' motion to dismiss Claim Eleven is GRANTED without leave to amend;
3. Investigator Defendants' motion to dismiss Claim Five is DENIED;
4. Investigator Defendants' motion to dismiss Claim Eleven is GRANTED without leave to amend;
5. Investigator Defendants' motion to dismiss Claim Twelve is GRANTED with leave to amend;
6. Vroman's motion to dismiss Claims One through Six, Ten, Twelve and Thirteen is GRANTED with leave to amend; and
7. Vroman's motion to dismiss Claim Eleven is GRANTED without leave to amend.

1       Plaintiffs may file an amended complaint no later than thirty (30) days after the electronic

2 filing date of this Order.  The Court advises Plaintiffs that while any amendment can incorporate

3 prior and subsequent paragraphs by reference, such incorporation should be strictly limited to

4 paragraphs that are relevant and support the cause of action. *See, e.g.*, *Willis v. City of*

5 *Bakersfield*, No. 1:21-CV-1077-AWI-JLT, 2021 WL 5054437, at *14 (E.D. Cal. Nov. 1, 2021)

6 (noting similarly).  If Plaintiffs file an amended complaint, Defendants shall file any responsive

7 pleading no later than twenty-one (21) days from the filing date of the amended complaint.  If

8 Plaintiffs opt not to file an amended complaint, this action will proceed only on the claims not

9 dismissed herein, and Defendants shall file their answer no later than twenty-one (21) days from

10 Plaintiffs' deadline for filing an amended complaint.

11 Date:  February 12, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

15