UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JUSTIN GONZALEZ, et al.,

Plaintiff,

v.

YOLO COUNTY, et al.,

Defendants.

No. 2:24-cv-01683-TLN-AC

**ORDER**

This matter is before the Court on Defendants Yolo County ("County") and City of Woodland's ("City") (collectively, "Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint. (ECF No. 27.) Plaintiffs Justin Gonzalez, Morgan Gonzalez, Linda Gonzalez, and Charles Gonzalez filed an opposition. (ECF No. 28.) Defendants filed a reply. (ECF No. 30.) For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss.

///

///

///

///

## I. Factual and Procedural Background

The Court's February 12, 2025, Order sets forth the factual background of this action. (ECF No. 24 at 2–3.) The Court recounts only the facts relevant to the instant motion. On August 30, 2016, Ronald Antonio was stabbed to death. (ECF No. 1 at 2, 6.) Plaintiff Justin Gonzalez ("Gonzalez") alleges investigators fabricated witness testimony and suppressed exculpatory evidence, causing his wrongful conviction and seven years of incarceration before his acquittal. (*Id.* at 10–11.) Gonzalez, his wife Morgan Gonzalez, and his parents Linda Gonzalez and Charles Gonzalez (collectively, "Plaintiffs") filed this action on June 12, 2024. (ECF No. 1.)

On February 12, 2025, the Court dismissed Plaintiffs' *Monell* claims under 42 U.S.C. § 1983 ("§ 1983") against Defendants for unconstitutional policies, customs, and practices (Claim Eight) and failure to train (Claim Nine) with leave to amend. (ECF No. 24 at 14–15.)

On March 15, 2025, Plaintiffs filed the First Amended Complaint ("FAC"), reasserting both claims and adding allegations concerning the County's Conviction and Sentence Review Unit (the "Unit"). (ECF No. 25 at 40–47.) Plaintiffs allege the Unit has resolved fifteen wrongful convictions since 2019, including five involving mistaken identity and one involving evidence issues. (*Id.* at 42–43, 46–47.) They also identify a 2019 case in which the Unit sought dismissal of a great bodily injury enhancement after later-produced evidence called into question whether the defendant caused the injuries. (*Id.*) Plaintiffs allege these cases demonstrate unconstitutional customs and training deficiencies that caused Gonzalez's wrongful conviction.

On March 27, 2025, Defendants filed the instant motion to dismiss Claims Eight and Nine and seek dismissal from this action. (ECF No. 27; ECF No. 27-1 at 1–2.)

## II. Standard of Law

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more

than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 or incorporated by reference. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## III. ANALYSIS

A municipality may not be vicariously liable under § 1983 for an injury caused by its employee or agent. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). However, "municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Defendants move to dismiss Plaintiffs' *Monell* claims for unconstitutional customs, policies, or practices (Claim Eight) and for failure to train (Claim Nine). (ECF No. 27-1 at 3–4.) Defendants move to dismiss both claims, contending that Plaintiffs fail to allege sufficient facts to support either of these claims. (*Id.*) The Court will address each claim in turn.

### A. Unconstitutional Custom, Practice, or Policy

Defendants argue the fifteen exonerations neither establish similar constitutional violations nor identify misconduct attributable to either entity. (ECF No. 27-1 at 3–4.) In opposition, Plaintiffs assert that the fifteen exonerations, including cases involving mistaken identity and evidence issues, demonstrate a widespread municipal custom of wrongful incarceration and exceed the number of incidents courts have found insufficient to support an unconstitutional custom, practice, or policy claim. (ECF No. 28 at 4–7.) Plaintiffs further assert

that repeated violations during Gonzalez's prosecution independently establish that custom. (*Id.* at 8.) In reply, Defendants argue that exoneration alone does not establish a constitutional violation and that general references to mistaken identity and evidence issues do not show misconduct similar to that alleged here. (ECF No. 30 at 2.)

Where a plaintiff seeks to establish a *Monell* claim based on a longstanding custom, he must sufficiently allege: (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a longstanding custom that amounted to a policy; (3) the custom amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the custom is the moving force behind the constitutional violation. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal citation omitted). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* Additionally, a *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The Court agrees with Defendants that the exoneration allegations do not plausibly establish the asserted custom. The FAC alleges the Unit has resolved fifteen wrongful convictions since 2019, including five involving mistaken identity and one involving evidence issues. (ECF No. 25 at 42–43.) But the FAC does not allege facts showing officials in those cases coerced identifications, fabricated testimony, or suppressed exculpatory evidence, as Gonzalez alleges the investigators did in his case. References to mistaken identity and evidence issues identify grounds for correcting a conviction but do not indicate one way or another whether similar unconstitutional conduct caused the conviction. The Court therefore cannot infer a pattern of similar constitutional violations from the exonerations alone.

The FAC's only specific example does not cure this deficiency. Plaintiffs allege the Unit

sought dismissal of a great bodily injury enhancement after later-produced evidence called into question whether the defendant caused the injuries. (ECF No. 25 at 42–43.) Nothing in that description suggests officials improperly withheld the evidence or otherwise violated the defendant's constitutional rights. Nor does the Unit's existence, without more, establish a practice of causing wrongful convictions. Its described function is to review and correct them. Thus, Plaintiffs' emphasis on the number of exonerations does not supply the missing allegations of similar unconstitutional conduct.

The alleged misconduct during Gonzalez's prosecution does not, by its repetition alone, plausibly establish a municipal custom. Plaintiffs cite *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) and *Nyarecha v. County of Los Angeles*, No. 23-55773, 2024 WL 4511616 (9th Cir. Oct. 17, 2024) to argue that repeated violations within a single case can establish such a custom. (ECF No. 28 at 7–8.) Those cases, however, involved additional evidence connecting the officers' conduct to a municipal practice. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1147–49 (9th Cir. 2005) (finding a triable issue where officers required individuals to remove anti-World Trade Organization buttons or stickers before entering a restricted area and a command officer's testimony linked those restrictions to city policy); *Nyarecha v. Cnty. of Los Angeles*, No. 23-55773, 2024 WL 4511616, at *2 (9th Cir. Oct. 17, 2024) (finding a triable issue based on twenty-six similarly deficient safety checks on an inmate who later died by at least six officers across two shifts and a supervisor's statement that the checks complied with policy). Here, Plaintiffs emphasize the frequency and duration of the alleged misconduct in Gonzalez's case (ECF No. 28 at 8), but they identify no comparable facts suggesting that it reflected a "traditional method of carrying out policy." *Trevino*, 99 F.3d at 918. Their allegations therefore do not plausibly connect the violations of Gonzalez's rights to a municipal custom.

Plaintiffs' emphasis on the number of exonerations also does not establish a municipal custom. Citing *Trevino* and *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988), Plaintiffs argue that fifteen exonerations far exceed the two incidents the Ninth Circuit has found insufficient to support an unconstitutional custom, practice, or policy claim. (ECF No. 28 at 4–5.) But the FAC's deficiency lies in what those exonerations show, not merely how many occurred.

As explained above, Plaintiffs do not allege facts showing that comparable unconstitutional conduct caused those convictions. The number of exonerations therefore does not establish the persistent and widespread practice necessary to support Plaintiffs' claim.

The FAC therefore fails to state a *Monell* claim based on an unconstitutional policy, custom, or practice. Accordingly, the Court GRANTS Defendants' motion to dismiss Claim Eight.

B. <u>Failure to Train</u>

Defendants argue the FAC's conclusory allegations lack sufficient factual support to state a failure-to-train claim. (ECF No. 27-1 at 3–4.) In opposition, Plaintiffs assert Defendants' failure to investigate or discipline employees demonstrates an unconstitutional practice or custom, and their failure to train employees caused Gonzalez's wrongful incarceration. (ECF No. 28 at 9.) Plaintiffs further assert the violations of Gonzalez's rights reveal inadequate training in investigating crimes and exonerating innocent individuals. (*Id.* at 9–10.) In reply, Defendants argue the fifteen exonerations do not establish constitutional violations sufficient to support a failure-to-train claim. (ECF No. 30 at 2.)

A local government's failure to train employees may rise to the level of an official policy under *Monell*, but the omission must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citation omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs v. Brown* (*Brown*), 520 U.S. 397, 409 (1997)). However, a plaintiff can "prov[e] a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long*, 442 F.3d at 1186 (quoting *Brown*, 520 U.S. at 409). Evidence of "a recurring

failure to investigate and discipline municipal officers for constitutional violations" may also establish an unconstitutional custom. *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1235 (9th Cir. 2011).

Plaintiffs do not allege sufficient facts to establish deliberate indifference as applicable precedent requires. As discussed above, the fifteen exonerations do not plausibly show a pattern of similar constitutional violations because Plaintiffs do not explain whether comparable misconduct caused the convictions underlying those exonerations. References to mistaken identity and evidence issues do not establish constitutional violations, much less violations resulting from inadequate training. Without facts indicating a pattern of constitutional violations, the exonerations do not support an inference Defendants demonstrated "deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. Plaintiffs therefore cannot establish deliberate indifference merely by characterizing the exonerations as evidence of an unconstitutional training policy without also providing facts in support of that contention.

The alleged violations during Gonzalez's prosecution also do not establish liability outside of a pattern of similar violations that is "ordinarily necessary" for a failure-to-train claim. Plaintiffs contend the investigators' misconduct made their inadequate training obvious. (ECF No. 28 at 9.) But "[t]he issue is whether the training program is adequate" and whether any inadequacy represents municipal policy. *Long*, 442 F.3d at 1186. An individual officer's shortcomings do not alone establish a deficient municipal training program. *See City of Canton*, 489 U.S. at 390–91 (explaining an officer's inadequate training may result from factors other than a faulty training program). Plaintiffs identify no facts explaining what training Defendants failed to provide or why that omission made the alleged violations a "highly predictable consequence" of failing to prepare investigators for recurring situations. *Long*, 442 F.3d at 1186 (quoting *Brown*, 520 U.S. at 409). Plaintiffs' general assertion that the investigators lacked training to investigate crimes and exonerate innocent individuals does not connect the alleged misconduct to a municipal training deficiency. Nor does their assertion that inadequate training caused Gonzalez's wrongful incarceration supply facts supporting that connection.

Plaintiffs' failure-to-discipline claim likewise lacks factual support. Although "a

recurring failure to investigate and discipline" employees for constitutional violations may support an unconstitutional custom, Plaintiffs identify no facts describing such a recurring municipal response. *Hunter*, 652 F.3d at 1235. They also do not explain how Defendants' alleged inaction placed them on notice of deficient training. Plaintiffs' conclusory assertion therefore does not plausibly establish a deliberate indifference to inadequate training.

The FAC therefore fails to state a *Monell* claim for failure to train. Accordingly, the Court GRANTS Defendants' motion to dismiss Claim Nine.[1]

C. Leave to Amend

Plaintiffs request leave to amend if the Court grants the motion. (ECF No. 28 at 8.) In reply, Defendants argue further amendment would be futile because Plaintiffs already had an opportunity to allege similar constitutional violations but failed to do so. (ECF No. 30 at 2.)

The Court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).

The Court cannot conclude further amendment would be futile. Although Plaintiffs' first amendment did not cure the pleading deficiencies, additional facts concerning similar constitutional violations or municipal training deficiencies could support their claims. The prior opportunity to amend does not establish Plaintiffs cannot allege such facts. Accordingly, the Court GRANTS Plaintiffs leave to amend Claims Eight and Nine.

///

///

[1] Defendants also request dismissal from the action. (ECF No. 27-1 at 4.) Because their motion challenges only Claims Eight and Nine, the Court declines to dismiss Defendants from the action. (*See* ECF No. 25 at 47–48 (indicating two of the remaining claims are against all defendants).)

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 27) with leave to amend as to Claims Eight and Nine. Plaintiff may file an amended complaint not later than thirty (30) days from the electronic filing date of this Order. Defendants' responsive pleading is due twenty-one (21) days after the electronic filing date of Plaintiff's amended complaint.

IT IS SO ORDERED.

DATE: September 29, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE